FILED
2014 Aug-21  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **CAROLYN DENISE JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 6:13-CV-1248-VEH** |
| | ) | |
| **CAROLYN COLVIN, ACTING** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | | |

---

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Carolyn Denise Jones brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Supplemental Security Income ("SSI"). Ms. Jones timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). For the following reasons, the court **AFFIRMS** the Commissioner's decision.

### STATEMENT OF THE CASE

Ms. Jones was 46 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 133 *with* Tr. 9. She has completed her General Education Diploma ("GED"). Tr. 30. Her past work experience includes employment as a door assembler. Tr. 152. She claims she became disabled on June 7, 2010, due to back pain; numbness in her hands, feet, and face; an inability read and write well; anxiety and depression; and high blood pressure. Tr. 151. Her last period of work ended on June 1, 2003. *Id.*

On June 7, 2010, Ms. Jones protectively filed a Title XVI application for SSI on that date. Tr. 9. On September 2, 2010, the Commissioner initially denied these claims. *Id.* Ms. Jones timely filed a written request for a hearing on October 19, 2010. *Id.* The ALJ conducted a hearing on the matter on January 6, 2012. *Id.* On January 24, 2012, he issued his opinion concluding Ms. Jones was not disabled and denying her benefits. Tr. 21.  She timely petitioned the Appeals Council to review the decision on February 9, 2012. Tr. 5. On May 13, 2013, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Jones filed a Complaint with this court on July 3, 2013, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on October 31, 2013. Doc. 7. Ms. Jones filed a supporting brief (doc. 10) on December 12, 2013,

and the Commissioner responded with her own (doc. 13) on February 23, 2014.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether the claimant has a severe impairment;

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.     Ms. Jones had not engaged in substantial gainful activity since June 7, 2010, the alleged disability onset date.

2.     She had the following severe impairments: degenerative changes of the lumbar spine, borderline intellectual functioning, and depressive disorder.

5

3.      She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.      She had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except she can occasionally climb, crouch, crawl, stoop, and kneel; she cannot engage in work with exposure to vibrations; she is limited to work activity that allows her to sit and stand at will; she is limited to unskilled work activity with occasional coworker interaction and no public interaction.

5.      She was unable to perform any past relevant work.

6.      She was born on [redacted], 1965, and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.      She had at least a high school education and was able to communicate in English.

8.      Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

9.      Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

10.     She had not been under a disability, as defined in the Social Security Act, from June 7, 2010, through the date of this decision.

Tr. 11-21.

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

## I.   The ALJ Properly Discredited Ms. Jones's Pain-Based Allegations.

Ms. Jones alleges pain as one of the sources of her disability. Tr. 15. Specifically, she complains of back pain and hand and foot numbness. *Id.* The court will thus examine whether the ALJ properly evaluated Ms. Jones's pain-based allegations under the prevailing standards in this Circuit. A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" must show the following:

- • Evidence of an underlying medical condition; and

- • Either:

    ‣ objective medical evidence confirming the severity of the alleged pain; or

    ‣ that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

7

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ must articulate "explicit and adequate reasons" in order to discredit subjective testimony. *Id.* (citation omitted). Failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). However, the ALJ does not need to "specifically refer to every piece of evidence in his decision," so long as the decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

The ALJ here was both explicit and convincing in explaining why she discredited Ms. Jones's allegations regarding the disabling effects of her pain. She first conceded that there was objective evidence substantiating some of Ms. Jones's alleged medical conditions. Tr. 16. She then marshaled substantial evidence undermining Ms. Jones's claims as to the severity of her alleged pain and to the disabling effects such pain ostensibly had on her. This evidence included the following facts:

- A December 19, 2011, x-ray of her lumbar spine revealed only mild to moderate degenerative changes;

- During an August 2010 consultative examination with Dr. Samia Sana Moizuddin, M.D, she had 5/5 strength, normal muscle tone without atrophy or abnormal movements, normal dexterity, normal grip strength, full range of motion, and an intact sensory examination;

- A June 26, 2008, EMG ordered by Dr. Gordon J. Kirschberg, M.D., before Ms. Jones's alleged disability onset date revealed only mild right carpal tunnel syndrome with no findings related to neuropathy ridiculopathy;

- In that examination, Dr. Kirschberg also noted that the EMG findings provided no explanation for her alleged diffused numbness and tingling;

- The treatment record – which includes notes from Dr. Boyde Jerome Harrison, M.D., her primary care provider – do not reflect significant or legible lumbar-related clinical findings outside of mild limitations in her lumbar range of motion and intermittent muscle spasm.

Tr. 16. Altogether, the ALJ provided "such relevant evidence as a reasonable person would accept as adequate to support [his] conclusion." *Bloodsworth*, 703 F.2d at 1239. The ALJ justifiably characterized the objective evidence as "benign," but she nevertheless adjusted her RFC determination to accommodate Ms. Jones's various postural limitations. Tr. 16-17. In doing so, she crafted an RFC that was suitably grounded in the record. The court thus finds her analysis legally sufficient.

## II.   The ALJ Properly Assessed the Medical Opinion Evidence.

Ms. Jones also argues that the ALJ failed to accord proper weight to the medical opinion evidence. The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted).

9

"Good cause" exists when

- the treating physician's opinion was not bolstered by the evidence,

- the evidence supported a contrary finding; or

- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam).

In this case, Dr. Harrison submitted two pieces of evidence: (1) his progress notes from January 2009 to June 2010 (tr. 281-302) and from January 2010 to December 2011 (tr. 345-60);  and (2) a sworn statement in which he is interviewed by Ms. Jones's attorney (tr. 364-88). In his sworn statement, he confirmed that he had seen her roughly 40 times since she began treatment with him in 2004. He further diagnosed her with "low back pain . . . that's been persistent over many years." He

also noted that he had treated her for depression – which "waxes and wanes" for her – hypertension (which is "moderately controlled"), and chronic obstructive pulmonary disease. He agreed with her attorney's description of her pain levels and postural restrictions as "consistent" with what he's seen from her and that such complains could be "reasonably expected from her underlying medical condition." The doctor opined that her complaints seemed credible and that they corresponded with his observations of her movements.

The ALJ considered this evidence and provided good cause for not fully crediting it. In her opinion, she provided the following assessment:

> Although Dr. Harrison indicates [Ms. Jones] is not a malingerer, does not exaggerate her symptoms, and that her symptoms could reasonably be caused by her condition, he does not state specific limitations the claimant experiences because of her impairments. He merely agreed that [Ms. Jones] had reported similar functional limitations to him as she had to her attorney, and that her complaints would be reasonably expected from her underlying medical condition. However, his progress notes and the other evidence of record, as discussed previously, do not support a finding that the claimant is limited as described in the [RFC] assessment determined in this decision.

Tr. 19. The ALJ therefore noted that Dr. Harrison never formally opined that Ms. Jones had disabling functional limitations. To the degree that the doctor was implying such, the ALJ discredited such an evaluation by observing that it was inconsistent with his own medical records and with the other evidence on record. As such a determination was supported by the substantial evidence identified above, it

11

adequately constituted the "good cause" required to discredit a treating physician's opinion.

Ms. Jones next contends that the ALJ wrongly dismissed the opinion of Renee Philpot Bowen, a chiropractor who examined her one one occasion and filled out a RFC assessment form. This form indicated that Ms. Jones could only sit two hours continuously at a time, stand and/or walk for one hour, sit five hours total for an entire work day, and stand and/or walk two hours for such a work day. In the form, Ms. Bowen also opined Ms. Jones would have to lay down one hour per work day to rest and alleviate her pain. The ALJ declined to give this opinion controlling weight for three reasons:

- a chiropractor is not an acceptable medical source;

- Ms. Bowen did not have a "meaningful treating relationship" with Ms Jones; and

- Ms. Bowen provided her opinion in the form of a "check mark" RFC assessment (which the ALJ gave little weight).

Substantial evidence supports each of these reasons, and they accord with the prevailing precedent within the Eleventh Circuit. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citations omitted) (holding that the ALJ properly discredited the claimant's chiropractor's opinion because he was not an "acceptable source" and thus his opinion could not establish an

12

impairment for Social Security disability purposes).

### III.   Substantial Evidence Supported the ALJ's Mental RFC Determination.

Beyond her physical, pain-based allegations, Ms. Jones also claims that her severe mental impairments are disabling. As noted, the ALJ found that Ms. Jones had the severe impairment of "borderline intellectual functioning." "[B]orderline intellectual functioning is a nonexertional impairment." *Williams v. Massanari*, Case No. CA 00-0787-BH-C, 2001 WL 530458, at *3 (S.D. Ala. May 10, 2001). However, the ALJ concluded that neither it – nor any of her claimed depressive symptoms – disabled Ms. Jones. She specifically concluded that Ms. Jones was "limited to, but capable of sustaining, unskilled work activity with occasional coworker interaction and no public interaction." Tr. 17. In support of this conclusion, the ALJ cited the following evidence:

- Ms. Jones "has not generally received the type of treatment one would expect from an individual alleging disabling mental health symptoms and limitations";

- Although Ms. Jones had been prescribed Celexa by Dr. Harrison, his treatment notes did not reflect that she regularly or consistently complained to him of mental health symptoms;

- Moreover, she had not received mental health treatment from a mental healthy care specialist – only Dr. Harrison (nor was there evidence Dr. Harrison referred her to one);

- In her August 2010 consultative examination with Dr. Jerry Gragg, Psy.

> D., she reported only mild restriction in her daily living activities
> secondary to depressive moods;

- During that examination, Dr. Gragg reported that she was fully oriented, demonstrated no significant impairment in her memory functioning, displaying good capacity for attention and concentration, her fund of knowledge was consistent with her education, and she had no impairment in her receptive or expressive language;

- Furthermore, Dr. Gragg reported that she had normal motor functioning and speech, with logical, relevant, and goal-directed thought process;

- Although she demonstrated intelligence in the borderline range and did not try very hard to answer questions related to her background, Dr. Gragg opined that she retained the capacity to respond appropriately to supervision, had adequate social skills to relate to others, and demonstrated adequate intellectual functioning to be able to understand, remember, and carry out simple instructions.

Tr. 17. In regard to the latter evidence, the ALJ stated the following regarding Ms.

Jones's RFC:

> [Ms. Jones's] diagnosed borderline intellectual functioning could reasonably
> be expected to prevent her from engaging in skilled work activity. Based on
> [her] performance during the mental status examination, the undersigned finds
> [Ms. Jones] limited to simple and repetitive tasks. The [RFC] accommodates
> this by limiting the claimant to unskilled work activity. Additionally, based on
> [Ms. Jones's] report that she becomes agitated easily and her hearing testimony
> that she does not regularly interact with others, the [RFC] limits the claimant
> to work involving occasional coworker interaction and no public interaction.
> However, [Ms. Jones's] general overall performance during the consultative
> mental status examination support a finding that the [she] can sustain skilled
> work activity.

Tr. 17-18. The court finds that substantial evidence supports this conclusion. The ALJ

14

meticulously documented the available evidence regarding Ms. Jones's alleged mental limitations and rendered an assessment that "a reasonable person would accept as adequate to support her conclusion." *Bloodsworth*, 703 F.2d at 1239.

### CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separated order.

**DONE** and **ORDERED** this the 21st day of August, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge